Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Cindy Chan (SBN 247495)
cchan@blakelylawgroup.com
Jessica C. Covington (SBN 301816)
jcovington@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff*
*Deckers Outdoor Corporation*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FORTUNE DYNAMIC, INC., a California Corporation; CAROL LEE, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 2:15-cv-00769 PSG (SSx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br><u>Hearing</u>:<br><br>Date:  May 11, 2015<br>Time:  1:30 p.m.<br>Courtroom:  880 - Roybal<br><br>**Hon. Philip S. Gutierrez** |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................1

II.    STANDARD OF REVIEW ON MOTION TO DISMISS ......................2

III.   DECKERS' TRADE DRESS INFRINGEMENT CLAIMS ARE
ADEQUATELY PLED.................................................................3

     A.    Deckers Has Sufficiently Pled the Claimed Trade Dress ..............4

     B.    Deckers Has Sufficiently Pled Non-Functionality  ......................6

     C.    Deckers Has Sufficiently Pled Secondary Meaning.....................8

IV.   DECKERS' DESIGN PATENT INFRINGEMENT CLAIMS ARE
ADEQUATELY PLED................................................................10

     A.    Defendants Cannot Invalidate the D599,999 Patent on a Motion
to Dismiss ..................................................................11

     B.    Deckers Has Sufficiently Pled Willful Patent Infringement...........12

V.    DECKERS' UNFAIR COMPETITION CLAIMS ARE
ADEQUATELY PLED................................................................14

     A.    Deckers Has Sufficiently Pled Its Claims of Trade Dress and
Therefore Has Sufficiently Pled Its Claim of Unfair
Competition Under California State and Common Law ...............14

     B.    Deckers Has Standing for Its Claim of Violation of California
Business and Professions Code § 17200........................................15

     C.    Deckers' California State and Common Law Unfair
Competition Claims are not Preempted by its Federal Claims .......16

VI.   DECKERS' CLAIMS AGAINST DEFENDANT CAROL LEE ARE
ADEQUATELY PLED................................................................19

     A.    Individual Liability for Deckers' Trade Dress Claims ..................19

     B.    Individual Liability for Deckers' Unfair Competition Claims .......22

     C.    Individual Liability for Deckers' Patent Infringement Claim ........22

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

VII.    DECKERS IS ENTITLED TO LEAVE TO AMEND IN THE
        EVENT THIS COURT GRANTS DEFENDANTS' MOTION ..............24

VIII.   CONCLUSION ...........................................................................................24

1

## **TABLE OF AUTHORITIES**

2

CASES

3

AddVenture Prods. v. Simply Smashing, Inc.,
4     2007 U.S. Dist. LEXIS 69607 (S.D. Cal. Sept. 20, 2007) ............................... 18

5 Adobe Systems Inc. v. Childers,
    2011 U.S. Dist. LEXIS 14534 (N.D. Cal. Feb. 14, 2011) ............................. 20

6 Airwair Int'l LTD v. Vans, Inc.,
7     2013 U.S. Dist. LEXIS 100120 (N.D. Cal. July 17, 2013) ............................ 15

8 Allen v. City of Beverly Hills,
    911 F. 2d 367 (9th Cir. 1990) ....................................................................... 24

9 American Technical Machinery Corp. v. Masterpiece Enterprises, Inc.,
10     235 F.Supp. 917 (D.C.Pa. 1964) ................................................................ 23

11 Amini Innovation Corp. v. McFerran Home Furnishings, Inc.,
    301 F.R.D. 487 (C.D. Cal. 2014) ................................................................ 12

12 Apple Inc. v. Samsung Elecs. Co.,
13     2011 U.S. Dist. LEXIS 139049 (N.D. Cal. Dec. 2, 2011) ........................... 12

14 Ashlar, Inc. v. Structural Dynamics Research Corp.,
    1995 WL 639599 (N.D. Cal. June 23, 1995) ............................................ 9, 10

15 Aurora World, Inc. v. TY Inc.,
16     719 F. Supp. 2d 1115 (C.D. Cal. 2009) ..................................................... 8, 18

17 Autodesk, Inc. v. Dassault Systemes Solidworks Corp.,
    2008 U.S. Dist. LEXIS 109800 (N.D. Cal. Dec. 18, 2008) ............................ 8

18 Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.,
19     Case No. 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012) ............................... 13

20 Axis Imex, Inc. v. Sunset Bay Rattan, Inc.,
    2009 U.S. Dist. LEXIS 2667, 8-9 (N.D. Cal. Jan. 7, 2009) .......................... 5, 7

21 Bank of the West v. Superior Court,
22     2 Cal. 4th 1254 (1992) ................................................................................ 18

23 Berryman v. Merit Prop. Mgmt., Inc.,
    152 Cal. App. 4th 1544 (2007) .................................................................... 17

24 Best of Everything of Sw. Florida, Inc. v. Simply the Best, LLC,
25     2011 WL 4634147 (M.D. Fla. Oct. 6, 2011) ............................................... 21

26 B-K Lighting, Inc. v. Vision3 Lighting,
    930 F. Supp. 2d 1102 (C.D. Cal. 2013) ...................................................... 12

27 Boschma v. Home Loan Center, Inc.,
28     198 Cal. App. 4th 230 (Cal. App. 4th Dist. 2011) ....................................... 16

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Brian Lichtenberg, LLC v. Alex & Chloe, Inc.,
2014 U.S. Dist. LEXIS 18607 (C.D. Cal. Feb. 13, 2014) ..................................7

BriteSmile, Inc. v. Discus Dental, Inc.,
2005 WL 3096275 (N.D. Cal., 2005) ...................................... 19

Carson v. Verismart Software,
2012 U.S. Dist. LEXIS 42116 (N.D. Cal. Mar. 27, 2012)............................. 20

Cazares v. Household Finance Corp.,
2005 WL 6418178 (C.D. Cal.,2005) ...................................... 24

Chanel, Inc. v. Italian Activewear of Florida, Inc.,
931 F.2d 1472 (11th Cir., 1991) ...................................... 20

Chloe v. DesignersImports.com USA, Inc.,
2009 WL 1227927 (S.D.N.Y. Apr. 30, 2009)...................................... 20

Clamp Mfg. Co. v. Enco Mfg. Co.,
870 F.2d 512 (9th Cir.1989) ...................................... 8

Cleary v. News Corp.,
30 F.3d 1255 (9th Cir.1994) ...................................... 15

Clegg v. Cult Awareness Network,
18 F.3d 752 (9th Cir. 1994) ...................................... 3

Clicks Billiards, Inc. v. Sixshooters Inc.,
251 F.3d 1252 (9th Cir. 2001) ...................................... 7, 8

Deckers Outdoor Corp. v. J.C. Penney Co.,
2014 U.S. Dist. LEXIS 126299 (C.D. Cal. Sept. 8, 2014) .......................... 17

Dimension One Spas, Inc. v. Coverplay, Inc.,
2008 WL 4165034 (S.D. Cal., 2008) ...................................... 19

Dita, Inc. v. Mendez,
2010 U.S. Dist. LEXIS 135856 (C.D. Cal. Dec. 14, 2010) .......................... 3

Doe v. U.S.,
58 F.3d 494 (9th Cir. 1995) ...................................... 24

E Clampus Vitus v. Steiner,
2013 WL 4431992 (E.D. Cal. 2013) ...................................... 23

Ellison Educ. Equip., Inc. v. Chen,
2004 U.S. Dist. LEXIS 26947 (C.D. Cal. Dec. 21, 2004) .......................... 13

F.O.B. Instruments, Ltd. v. Krown Mfg.,
2007 U.S. Dist. LEXIS 102325 (D. Md. Aug. 29, 2007) .......................... 13

Gilligan v. Jam co Development Corp.,
108 F.3d 246 (9th Cir., 1997) ...................................... 2

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Glassybaby, LLC v. Provide Gifts, Inc.,
2011 U.S. Dist. LEXIS 60306 (W.D. Wash. June 6, 2011)................................6

Global Manufacturing Group, LLC v. Gadget Universe.Com,
417 F.Supp.2d 1161 (S.D. Cal. 2006)................................8

Globetrotter Software, Inc. v. Elan Computer Group, Inc.,
362 F.3d 1367 (Fed. Cir., 2004) .................................19

GNI Waterman LLC v. A/M Valve Company LLC,
2007 WL 2669503 (E.D. Cal. 2007)................................8

Golden Door, Inc. v. Odisho,
646 F.2d 347, 352 (9th Cir. 1980) .................................18

Hall v. Bed Bath & Beyond, Inc.,
705 F.3d 1357 (Fed. Cir. 2013) .................................10, 11

Hall v. City of Santa Barbara,
833 F.2d 1270 (9th Cir., 1986) .................................2

Hernandez v. Path, Inc.,
2012 U.S. Dist. LEXIS 151035 (N.D. Cal. Oct. 17, 2012) .................................12

Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg. Corp.,
1995 U.S. Dist. LEXIS 22676 (N.D. Cal. Aug. 30, 1995) .................................22

Ingrid & Isabel, LLC v. Baby Be Mine, LLC,
2014 U.S. Dist. LEXIS 140553 (N.D. Cal. Oct 1, 2014) .................................14

Int'l Mfg. Co. v. Landon, Inc.,
336 F.2d 723 (9th Cir.1964) .................................22, 23

Jardin v. Datallegro, Inc.,
2009 U.S. Dist. LEXIS 3339 (S.D. Cal. Jan. 18, 2009) .................................13

JTH Tax, Inc. v. Gouneh,
721 F.Supp.2d 132 (N.D.N.Y., 2010).................................21

Koon Chun Hing Kee Soy & Sauce Factory v. Star Mark Mgmt.,
2007 US. Dist. LEXIS 1404 (E.D.N.Y. Jan. 8, 2007) .................................13

Kwikset Corp. v. Superior Court,
51 Cal. 4th 310 (2011) .................................15

L.A. Gear Inc. v. Thom McAn Shoe Co.,
988 F.2d 1117 .................................12

Landscape Forms, Inc. v. Columbia Cascade Co.,
113 F.3d 373 (2d Cir. 1997) .................................5, 6

Lee v. Dayton-Hudson Corp.,
838 F.2d 1186 (Fed. Cir. 1988) .................................11

Liquid Dynamics Corp. v. Vaughan Company, Inc.,
   449 F.3d 1209 (Fed. Cir. 2006) ...................................................... 13

Mattel, Inc. v. Walking Mountain Prods.,
   353 F.3d 792 (9th Cir. 2003) ............................................................ 4

Minegar Envtl. Sys. v. Concrete Washout Sys.,
   2007 U.S. Dist. LEXIS 101959 (C.D. Cal. Apr. 24, 2007) .............................. 3

Mone v. Dranow,
   945 F.2d 306 (9th Cir. 1991) ............................................................ 20

Mortion v. Rank Am., Inc.,
   812 F. Supp. 1062 (C.D. Cal. 1993) ...................................................... 8

Navarro v. Block,
   250 F.3d 729 (9th Cir. 2001) ........................................................... 3

Novel, Inc. v. Unicom Sales, Inc.,
   2004 U.S. Dist. LEXIS 16861 (N.D. Cal. Aug.17, 2004) .............................. 20

Novell, Inc. v. Unicom Sales, Inc.,
   2004 WL 1839117 (N.D. Cal., 2004) ............................................... 20, 21

O'Connor v. Uber Techs., Inc.,
   2013 U.S. Dist. LEXIS 171813 (N.D. Cal. Dec. 5, 2013) ............................. 22

OTR Wheel Eng'g, Inc. v West Worldwid Servs.,
   2014 U.S. Dist. LEXIS 106004 (E.D. Wash. Aug. 1, 2014) ...................... 20, 23

PaperCutter, Inc. v. Fay's Drug Co.,
   900 F.2d 558 (2d Cir.1990) .............................................................. 9

Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.,
   203 F.3d 790 (Fed. Cir. 2000) ..................................................... 10, 11

Porter v. Jones,
   319 F.3d 483 (9th Cir. 2003) ............................................................ 2

Rachel v. Banana Republic,
   831 F.2d 1503 (9th Cir.1987) ............................................................ 6

Riverdeep Interactive Learning, Ltd. v. MPS Multimedia, Inc.,
   2006 U.S. Dist. LEXIS 94524 (N.D. Cal. Dec. 22, 2006) ............................. 21

Robert Bosch Healthcare Sys., Inc. v. Express MD Solutions, LLC,
   2012 WL 2803617 (N.D. Cal. July 10, 2012) ........................................ 13

Rosco, Inc. v. Mirror Lite Co.,
   304 F.3d 1373 (Fed. Cir. 2002) ......................................................... 12

Salt Optics, Inc. v. Jand, Inc.,
   2011 U.S. Dist. LEXIS 156237, 7-8 (C.D. Cal. Mar. 4, 2011) ........................ 5

Silva v. Bieluch,
  351 F. 3d 1045 (11th Cir. 2003) ......................................................... 24

SocialApps, LLC v. Zynga, Inc.,
  2012 U.S. Dist. LEXIS 14124 (N.D. Cal. Feb. 6, 2012) ..................... 12

Solid Host, NL v. Namecheap, Inc.,
  652 F.Supp.2d 1092 (C.D. Cal., 2009) ................................................. 9

Sony Gaming Networks & Customer Data Sec. Breach Litig.,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................ 15

Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.,
  7 F.3d 1434 (9th Cir. 1993) ............................................................... 16

TrafFix Devices, Inc. v. Marketing Displays, Inc.,
  532 U.S. 23 (2001) ............................................................................... 3

Two Pesos, Inc. v. Taco Cabana, Inc.,
  505 U.S. 763 (1992) .......................................................................... 3, 4

Unilin Beheer B.V. v. Tropical Flooring,
  2014 U.S. Dist. LEXIS 85955 (C.D. Cal. June 13, 2014) .................. 13

University of Rochester v. G.D. Searle & Co.,
  358 F.3d 916 (Fed. Cir. 2004) ........................................................... 12

Walker & Zanger, Inc. v. Paragon Indus.,
  549 F. Supp. 2d 1168 (N.D. Cal. 2007) ............................................ 5, 6

Watson Laboratories, Inc. v. Rhone—Poulenc Rorer, Inc.,
  178 F. Supp. 2d 1099 (C.D. Cal. 2001) ............................................. 18

Wordtech Sys. v. Integrated Network Solutions, Corp.,
  2009 U.S. Dist. LEXIS 93192 (E.D. Cal. Oct. 6, 2009) ............... 22, 23

Yellow Cab. Co. v. Yellow Cab of Elk Grove, Inc.,
  419 F.3d 925 (9th Cir. 2005) ............................................................... 8

Zenith Electronics Corp. v. Exzec, Inc.,
  182 F.3d 1340 (Fed. Cir., 1999) ........................................................ 19

## STATUTES

15 U.S.C. § 1125(1) ................................................................................. 3

35 U.S.C. § 171 ..................................................................................... 11

35 U.S.C. § 271 ............................................................................... 11, 23

35 U.S.C. § 284 ..................................................................................... 12

35 U.S.C. §271(b) ................................................................................. 23

Cal. Bus. & Prof. Code § 17204 ................................................................ 15

Cal. Bus. Prof. Code § 17200 ................................................................. 16

F.R.Civ.P. 12(b)(6) ................................................................................ 8

Fed.R.Civ.P. 12(f) ................................................................................ 13

FRCP 12(b)(6) ...................................................................................... 24

FRCP 15 ................................................................................................ 24

FRCP 15(a) ........................................................................................... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

A Rule 12(b)(6) motion tests only the legal sufficiency of the complaint, and not the weight of the evidence supporting it.  Defendants Fortune Dynamic and Carol Lee's (collectively "Defendants") Rule 12(b)(6) Motion to Dismiss Plaintiff Deckers Outdoor Corporation's ("Deckers") Complaint is nothing more than a motion for summary judgment in disguise, and a poor one at that.  Not only do Defendants attempt to introduce a hose of facts for this Court to consider at the pleading stage, they ask this Court to weigh said facts against those alleged by Deckers (which are to be deemed as true in evaluating the present motion).  As will be discussed in detail, Defendants' Motion is both procedurally and substantially devoid of merit.

Contrary to Defendants' assertions, the Bailey Button Boot Trade Dress is defined with particularity and further illustrated by images of boots embodying same. Furthermore, Deckers has pled <u>facts</u> beyond conclusory statements in support of its allegations that said trade dress is distinctive, non-functional, and has acquired secondary meaning.  Whether or not the Bailey Button Boot Trade Dress actually has acquired secondary meaning, is generic, or is non-functional are issues of fact not properly decided on a motion to dismiss.

Deckers also adequately alleges willful infringement of its D599,999 Patent by Defendants.  Defendants' attempt to invalidate said design patent on functionality grounds on a motion to dismiss is entirely improper where invalidity is an affirmative defense and it is Defendants that bear the burden of showing that the design patent is functional - Plaintiff need not plead that its design patent is non-functional because this is presumed by virtue of its registration.  Furthermore, Deckers has adequately pled willful infringement arising from Defendants' pre-suit knowledge and intent to copy Deckers' Bailey Button style of boots.  Again, willfulness is an issue of fact that is also to be determined after weighing the evidence, and not on a motion to dismiss.

1     Defendants' argument that the California state law claims are preempted by the

2  federal claims is equally misguided.  At the outset, Defendants entire argument

3  regarding preemption relies solely on cases discussing preemption of claims brought

4  under the UCL by the Patent Act.  However, Defendants disregard the fact that

5  Deckers' unfair competition claims are not based solely on an infringement of the

6  patent, but *additionally* on Defendants' intent to trade off of the goodwill established

7  by Deckers in its Bailey Button styles and to pass their goods off as if they were

8  associated, affiliated, and/or originate from Deckers UGG® brand.  Furthermore, even

9  if the Patent Act did in fact preempt the state law unfair competition claims arising

10  from the patent infringement, which it does not, Defendants' Motion is devoid of any

11  discussions regarding how the Lanham Act would in any way preempt the state law

12  claims.  Indeed, they do not - state law claims are not preempted where, as here, it

13  affords *more* protection to trademark owners than afforded under federal trademark

14  law.

15     Finally, Deckers has adequately pled individual liability of Defendant Carol Lee

16  where it has alleged that Ms. Lee is an "officer, member, director, and/or managing

17  agent" of Fortune Dynamic, Inc. and was the "active, moving, conscious force" behind

18  the alleged infringing activities.  The precise nature of Ms. Lee's involvement is a

19  discoverable fact, and her liability should not be determined at this early stage.

20  **II.**  **STANDARD OF REVIEW ON MOTION TO DISMISS**

21     To survive a Rule 12(b)(6) dismissal motion, a complaint need only satisfy the

22  minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of

23  the claim. [Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003)]  Thus, the Ninth Circuit

24  recognizes "a powerful presumption against rejecting pleadings for failure to state a

25  claim." [Gilligan v. Jam co Development Corp., 108 F.3d 246, 248-49 (9th Cir., 1997

26  (citing Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir., 1986) ("It is

27  axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with

28  disfavor and is rarely granted.'")]  "A complaint should not be dismissed unless it

appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  [Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994)]

In resolving a Rule 12(b)(6) motion, "[t]he Court must accept as true all non-conclusory, factual allegations made in the complaint," and "based upon these allegations…draw all reasonable inferences in favor of the plaintiff."  [Dita, Inc. v. Mendez, 2010 U.S. Dist. LEXIS 135856, 3 (C.D. Cal. Dec. 14, 2010) (internal citation omitted)]  "In evaluating a complaint, only its legal sufficiency, and not the weight of the evidence supporting it, may be considered."  [Minegar Envtl. Sys. v. Concrete Washout Sys., 2007 U.S. Dist. LEXIS 101959, 9 (C.D. Cal. Apr. 24, 2007) (citing Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)]  Accordingly, the court does not look to whether the plaintiff will prevail, but to "whether the claimant is entitled to offer evidence to support the claims."  [Dita, 2010 U.S. Dist. LEXIS 135856 at 14]

## III.   DECKERS' TRADE DRESS INFRINGEMENT CLAIMS ARE ADEQUATELY PLED

The Lanham Act, 15 U.S.C. § 1125(1), establishes a cause of action for trade dress infringement. "Trade dress" refers to the design or packaging of a product which serves to identify the product's source.  [TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 28 (2001)]  In trade dress claims, the total image or overall impression of the plaintiff's product, in its composite, is compared with the total image of impression of defendant's product in determining likelihood of confusion.  [J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:1 (4th ed. 2006)]  The purpose of trade dress protection, like trademark protection, is to "secure the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing products."  [Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 774 (1992

A.   **Deckers Has Sufficiently Pled the Claimed Trade Dress**

In the Ninth Circuit, trade dress "involves "the 'total image of a product and may include features such as size, shape, color, color combinations, texture, graphics, or even particular sales techniques.'"  [Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 808 n. 13 (9th Cir. 2003) (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 765 n. 1 (1992)]

Defendants' statement that the Bailey Button Boot Trade Dress is described as nothing more than "Classic suede boot styling made famous by the UGG® brand" is an inaccurate and misleading representation of the pleadings.  (see Defendants' Memorandum of Points and Authorities, p. 5, lines 14-17)  Paragraph 21 of the Complaint, wherein Deckers' Bailey Button Boot Trade Dress is described, reads more accurately as follows:

> consisting of a combination of the following non-functional elements:
>
> • Classic suede boot styling made famous by the UGG® brand;
>
> • Overlapping of front and rear panels on the lateral side of the boot shaft;
>
> • Curved top edges on the overlapping panels;
>
> • Exposed fleece-type lining edging the overlapping panels and top of the boot shaft; and
>
> • One or more buttons (depending on the height of the boot) prominently featured on the lateral side of the boot shaft adjacent the overlapping panels.

  

4

1    [Complaint, ¶ 21]

2        Under Rule 8 of the Federal Rules of Civil Procedure, an attached picture in

3    combination with pleadings regarding the shape, size, and placement of specific

4    features of a trade dress sufficiently identifies the trade dress with particularity to

5    warrant denial of a motion to dismiss the trade dress claim. [Axis Imex, Inc. v. Sunset

6    Bay Rattan, Inc., 2009 U.S. Dist. LEXIS 2667, 8-9 (N.D. Cal. Jan. 7, 2009)] In fact,

7    this district has denied Rule 12(b)(6) motions under similar circumstances to the one at

8    hand. In Salt Optics, Inc. v. Jand, Inc., 2011 U.S. Dist. LEXIS 156237, 7-8 (C.D. Cal.

9    Mar. 4, 2011), in alleging its trade dress, the plaintiff provided a list of elements

10    alleged to comprise a website's overall "look and feel," images of the trade dress, and

11    a juxtaposition of images of the plaintiff's website and that of the defendant. [Id.] The

12    court determined that this combination properly asserted a claim for trade dress

13    infringement and declined to dismiss the trade dress claim on the basis of inadequate

14    pleadings. [Id. at 7-8] Similar to Salt Optics, Deckers has, in addition to verbally

15    listing the primary characteristics of the Bailey Button Boot Trade Dress, provided

16    illustrations of footwear embodying said trade dress as well as images of Defendants'

17    knock-off products. [Complaint, ¶¶15, 21]

18        The cases cited by Defendants in support of their motion, Landscape Forms, Inc.

19    v. Columbia Cascade Co.,113 F.3d 373 (2d Cir. 1997) and Walker & Zanger, Inc. v.

20    Paragon Indus., 549 F. Supp. 2d 1168 (N.D. Cal. 2007), are entirely distinguishable

21    from the facts in this case. The court in Landscape Forms, in reviewing an appeal

22    from the issuance of a preliminary injunction, found plaintiff's pleading of its trade

23    dress insufficient where the complaint merely alleged the trade dress as "distinctive

24    elements which, when taken together, constitute a trade dress recognizable by

25    architects, landscape architects and designers, as well as the public at large," but failed

26    to list these elements [Landscape Forms,113 F.3d at 381] Similarly, in Walker &

27    Zanger, the court determined that plaintiff's description of its tile trade dress as "rustic

28    look," "weathered look," "architectural character," and "Old World," was generic,

1  overbroad, and did not provide adequate notice to competitors in the decorative tile

2  business about plaintiff's rights.  [Walker & Zanger, 549 F. Supp. 2d at 1176]

3       Unlike Landscape Forms (where plaintiff failed to set forth any elements of the

4  trade dress) and Walker & Zanger (where plaintiff only pled an overall look and feel),

5  Deckers specifically identifies in bullet points the non-functional elements of the trade

6  dress it seeks to protect.  Deckers' description of the Bailey Button Boot Trade Dress

7  is specific as to the type of materials, specific features, and the placement of these

8  features.  Such a detailed description combined with images more than adequately

9  places Defendants on notice of exactly "which aspects of its product design(s) merit

10  protection" thereby allowing this Court to "evaluate how unique and unexpected the

11  design elements are in the relevant market." [Landscape Forms, 113 F.3d at 381]

12  **B.     Deckers Has Sufficiently Pled Non-Functionality**

13       Defendants primarily rely on case law from the Second Circuit in support of its

14  position that Deckers has failed to adequately allege non-functionality with respect to

15  its trade dress.  The only case from the Ninth Circuit that Defendants references is one

16  from Washington involving a complaint that did not describe the design of the product

17  in any detail.  [See Glassybaby, LLC v. Provide Gifts, Inc., 2011 U.S. Dist. LEXIS

18  60306, 5 (W.D. Wash. June 6, 2011)]  The court's decision to dismiss the trade dress

19  claim in Glassybaby is distinguishable from the current case, as Deckers has provided

20  specific aspects of the description of the Bailey Button Boot Trade Dress in the form of

21  both a detailed list of elements as well as images of products which embody the trade

22  dress.  [Complaint, ¶ 21]

23       "A product feature is functional if it is essential to the product's use or if it

24  affects the cost and quality of the product."  [Rachel v. Banana Republic, 831 F.2d

25  1503, 1506 (9th Cir.1987)]  Functional features are the "actual benefit" that a

26  consumer wishes to purchase, as distinguished from an assurance that a particular

27  entity made, sponsored or endorsed a product. [Rachel, 831 F.2d at 1506]  Purely

28  aesthetic features cannot be functional." [Brian Lichtenberg, LLC v. Alex & Chloe,

Inc., 2014 U.S. Dist. LEXIS 18607, 12-13 (C.D. Cal. Feb. 13, 2014) (citing Clicks Billiards, Inc., 251 F.3d at 1259)]  However, in analyzing functionality, the focus is not on individual elements, but the "overall visual impression" and "composite tapestry of visual effects."  [Id.]

        In Brian Lichtenberg, the defendants "argue[d] that competitors would be at a significant disadvantage if they could not use 'pre-manufactured cotton t-shirts with stitching, black labels, and logos that are placed on the front, center of each t-shirt.'" [Brian Lichtenberg,  2014 U.S. Dist. LEXIS 18607 at 13]  However, this Court, in finding that plaintiffs had sufficiently alleged nonfunctional trade dress in its complaint, noted that defendants had mischaracterized plaintiff's description of the trade dress (much like Defendants have done in their Motion), and that the trade dress asserted in plaintiffs' complaint *also* included reference to "specific colors, fonts, subject material, styles, and textures" and that such elements combined to create a "distinctive, unitary whole notable for its aesthetic properties."  [Id.]

        As discussed above, Deckers has described with specificity the Bailey Button Boot Trade Dress by listing out various elements that comprise same.  While these same elements may serve a function, the proper inquiry regarding functionality is to look to the overall visual impression of the elements taken in combination.  Indeed, there are a number of boots in the marketplace that may serve the same functions as the Bailey Button boot but look entirely different.  It is the distinctive look of the Bailey Button Boot Trade Dress that has made it so popular and widely recognized in the Deckers' UGG® boot collection.

        In any event, an analysis of the facts speaking to functionality and whether the trade dress is generic cannot be resolved at the motion to dismiss stage and Defendants' attempt to resolve this issue at this state is inappropriate.[1]  Granting

---

[1] Axis Imex, 2009 U.S. Dist. LEXIS 2667 at 8; Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 614 (9th Cir.1989) (citing Clamp Mfg. Co. v. Enco Mfg. Co., 870 F.2d

judicial notice of Defendants' argumentative screenshots would lay grounds for a slippery slope for containing 12(b)(6) motions to the allegations of a complaint.[2]  As demonstrated by Defendants' lack of citation to *any* case law wherein a motion to dismiss was granted  based upon genericness of a trade dress, this analysis is not appropriate at the pleadings stage.

### C.    Deckers Has Sufficiently Pled Secondary Meaning

When asserting federal trade dress protection, a plaintiff must show "acquired" or "secondary" meaning for the product design.  [Aurora World, Inc. v. TY Inc., 719 F. Supp. 2d 1115, 1150 (C.D. Cal. 2009) (citing Global Manufacturing Group, LLC v. Gadget Universe.Com, 417 F.Supp.2d 1161, 1164 (S.D. Cal. 2006))]  Secondary meaning is a way of describing the distinctiveness of the appearance of the product. [Aurora World, 719 F. Supp. 2d at 1151]  The "basic element" of this concept is "the

---

512, 514 (9th Cir.1989); *see also* Yellow Cab. Co. v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 928-29 (9th Cir. 2005) ("Whether a mark is generic is a question of fact"); Clicks Billiards, Inc. v. Sixshooters Inc., 251 F.3d 1252, 1258 (9th Cir. 2001 ("Functionality is a question of fact"); Mortion v. Rank Am., Inc., 812 F. Supp. 1062, 1069 (C.D. Cal. 1993) (holding that because functionality is a question of fact, it is not appropriate to dismiss a trade dress claim on a motion to dismiss); Autodesk, Inc. v. Dassault Systemes Solidworks Corp., 2008 U.S. Dist. LEXIS 109800, 5 (N.D. Cal. Dec. 18, 2008) ("Genericness and functionality are questions of fact, making dismissal under Rule 12(b)(6) inappropriate); GNI Waterman LLC v. A/M Valve Company LLC, 2007 WL 2669503 (E.D. Cal. 2007) (where Court noted that "[t]he fact that functionality is a factual issue is persuasive to avoid F.R.Civ.P. 12(b)(6) dismissal" of trade dress infringement claim)

[2] *See* Deckers' Objection to Defendants' Request for Judicial Notice filed concurrently herewith.  "[J]udicial notice is generally not the appropriate means to establish the legal principles governing the case."  [Toth v. Grand Trunk R.R., 306 F.3d 335, 349 (6th Cir. 2002) cited by Von Saher v. Norton Simon Museum of Arts at Pasadena, 592 F. 3d 954 (9th Cir. 2010); see also Pinterest Inc. v. Pintrips Inc., 15 F. Supp. 3d 992 (N.D. Cal. 2014) (where court denied defendants' request for judicial notice of web images/screenshots offered solely for the purpose of showing that plaintiff's mark was generic, noting that "this hotly contested question cannot be answered solely by reference to information gleaned from judicially noticeable documents")]

mental association by a substantial segment of consumers and potential consumers" of the appearance of the product with its source. [Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc)]  Thus, secondary meaning attaches when customers associate the product design with its source as opposed to the product itself.  [Aurora World, 719 F. Supp. at 1151; International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 824 (9th Cir. 1993)]

Deckers is not required to produce every piece of evidence to support its allegations that its trade dress has acquired secondary meaning in order to survive a motion to dismiss.  [Solid Host, NL v. Namecheap, Inc., 652 F.Supp.2d. 1092, 1108 (C.D. Cal., 2009)]  The existence of secondary meaning "may be 'inferred from evidence relating to the nature and extent of the public exposure achieved by the designation,' or from proof of intentional copying," [see Ashlar, Inc. v. Structural Dynamics Research Corp., 1995 WL 639599, 5 (N.D. Cal. June 23, 1995) (quoting PaperCutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 564 (2d Cir.1990)]  A specific allegation of the existence of secondary meaning is not required.  [Solid Host, 652 F. Supp. 2d at 1108]

Deckers has made allegations that refer to the (1) nature and extent of exposure of the Bailey Button Boot Trade Dress, as well as (2) Defendants' intent to copy Deckers' design.  With regards to the nature and extent of the Bailey Button boot's exposure, Deckers has alleged the following:

> The Bailey Button Boot Trade Dress is one of the most well-recognized and commercially successful styles of Deckers' UGG® brand of footwear, having been featured on Deckers' advertising and promotional materials as well as in various trade publications.  Deckers' Bailey Button boot receives much unsolicited media attention and various celebrities can be seen wearing UGG® boots with the Bailey Button Boot Trade Dress [Complaint, ¶ 23]

> Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG ® brand and its line of footwear embodying the Bailey Button Boot Trade Dress.  Deckers' efforts have been successful and Deckers has sold a substantial amount of

UGG® boots bearing the Bailey Button Boot Trade Dress. [Complaint, ¶ 24]

Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' UGG® Trademark and Bailey Button Boot Trade Dress have achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. [Complaint, ¶ 25]

Furthermore, Defendants' Infringing Products are virtually identical to Bailey Button Boot Trade Dress. [Complaint, ¶ 27] On that basis, Deckers has alleged that "Defendants are competitors and have copied Deckers' boot designs in an effort to exploit Deckers' reputation in the market" and "Defendants acts are willful, deliberate, and intended to confuse the public…" [Complaint, ¶¶ 16, 46] As discussed above, intent to copy is evidence of both secondary meaning and/or likelihood of confusion. [See Ashlar, supra, 1995 WL 639599 at 5]

Deckers has more than satisfied its burden in pleading secondary meaning. Defendants' arguments go towards the weight of the evidence and have little or nothing to do with whether Deckers has satisfied its pleading requirements under FRCP 8 or can survive a FRCP 12(b)(6) motion to dismiss. Whether Deckers' product design is functional, generic, or has acquired secondary meaning and whether there is a likelihood of confusion between the parties' respective goods are factual issues to be developed further during discovery and determined at a later time upon a more fully developed record.

## IV.   DECKERS' DESIGN PATENT INFRINGEMENT CLAIMS ARE ADEQUATELY PLED

In order to sufficiently plead design patent infringement, a plaintiff need only (1) allege ownership of the patent, (2) name each defendant, (3) cite the patent that is allegedly infringed, (4) state the means by which the defendant allegedly infringes, and (5) point to the section of the patent law invoked. [Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1362 (Fed. Cir. 2013) (Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790 (Fed. Cir. 2000)] If these elements are satisfied within a

complaint, then that is "enough detail to allow the defendants to answer" and "Rule 12(b)(6) requires no more." [Phonometrics, Inc., 203 F. 3d at 794] Deckers has sufficiently pled design patent infringement to survive this Rule 12(b)(6) motion. Deckers has satisfied these element by alleging:

> Deckers is the owner of numerous design patents to the various styles of footwear it offers under its UGG® brand. These design patents include but are not limited to the

> "Bailey Button" boot (U.S. Patent No. D599,999 issued on September 15, 2009) [Complaint, ¶ 33]

> Deckers is the owner by assignment of all right, title and interest in and to the '999 Patent. [Complaint, ¶ 34]

> Defendants have knowingly and intentionally imported, used, caused to be produced, distributed, advertised, marketed, offered for sale, and/or sold footwear that is substantially similar to the '999 Patent in direct violation of 35 U.S.C. § 271. [Complaint, ¶ 35]

With these statements, Deckers alleges ownership of the patent, cites the patent that is infringed, states the means by which the defendants infringe upon the patent, and points to the section of patent law which is invoked. The defendants are also named in this action, therefore satisfying all of the elements required to sufficiently state a claim for design patent infringement. [Bed, Bath & Beyond, Inc., 705 F.3d at 1362]

**A.    The D599,999 Patent Cannot be Invalidated on a Motion to Dismiss**

Defendants' long-winded argument regarding invalidity of the D599,999 Patent due to functionality cannot be considered on a Motion to Dismiss at all. In fact, Deckers is not required to make allegations that its design patent is non-functional because a design patent, by virtue of its registration, protects the non-functional aspects of a useful article. [Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1188-89 (Fed. Cir. 1988); see also 35 U.S.C. §§ 171] The design patent carries a presumption that it is valid. [35 U.S.C. § 282]

Invalidity is an ***affirmative defense*** to a claim of infringement of a design patent, and must be proven at trial by clear and convincing evidence ***by the Defendants*** - not Deckers. [Apple Inc. v. Samsung Elecs. Co., 2011 U.S. Dist. LEXIS 139049, 24-

1   29 (N.D. Cal. Dec. 2, 2011) (citing L.A. Gear Inc. v. Thom McAn Shoe Co., 988 F.2d

2   1117, 1123); B-K Lighting, Inc. v. Vision3 Lighting, 930 F. Supp. 2d 1102, 1116

3   (C.D. Cal. 2013) (citing University of Rochester v. G.D. Searle & Co., 358 F.3d 916,

4   920 (Fed. Cir. 2004) (a party seeking to invalidate a patent "must submit… clear and

5   convincing evidence of invalidity")]

6       The test for functionality to invalidate a design patent is a "stringent" one that

7   requires a showing that "the appearance of the claimed design is dictated by the use or

8   purpose of the article." [Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373, 1378 (Fed. Cir.

9   2002) (internal quotations omitted)]  Defendants' analysis regarding functionality lacks

10  foundation - statements regarding functionality are all inadmissible opinions made by

11  counsel that should be disregarded by this Court all together.  Because invalidity is an

12  affirmative defense on which the Defendants bear the burden of proof, this Court

13  cannot as a matter of law grant Defendants' Motion to Dismiss on these grounds.

14      **B.    Deckers Has Sufficiently Pled Willful Patent Infringement**

15      A Rule 12(b)(6) motion "is not an appropriate device to eliminate a portion of a

16  claim." [Hernandez v. Path, Inc., 2012 U.S. Dist. LEXIS 151035, 17-18 (N.D. Cal.

17  Oct. 17, 2012) (citing SocialApps, LLC v. Zynga, Inc., 2012 U.S. Dist. LEXIS 14124

18  (N.D. Cal. Feb. 6, 2012) ("motion under Rule 12(b)(6) may not be used to challenge

19  only certain allegations within a claim")]  Rather, such a challenge must be made by a

20  motion to strike under Rule 12(f).  Willful infringement is not a claim in and of itself,

21  but it is grounds for enhanced damages under 35 U.S.C. § 284.  [Amini Innovation

22  Corp. v. McFerran Home Furnishings, Inc., 301 F.R.D. 487, 490 (C.D. Cal. 2014)

23  ("Upon a finding of infringement, section 284 of the Patent Act requires the court to

24  award damages adequate to compensate for the infringement. Section 284 further gives

25  the court discretion to increase the damages up to three times the amount found or

26  assessed." (internal quotations and citations omitted)]  Thus, to the extent Defendants

27  are attempting to strike allegations regarding willfulness from the Complaint,

28

1    Defendants must do so via Rule 12(f) and specify the allegations which it moves to

2    strike. [Fed.R.Civ.P. 12(f)]

3         Granting of Defendants' motion at this early stage would be improper where the

4    determination of willfulness necessarily involves questions of intent and the weighing

5    of credibility of witnesses.  [F.O.B. Instruments, Ltd. v. Krown Mfg., 2007 U.S. Dist.

6    LEXIS 102325, 17 (D. Md. Aug. 29, 2007) citing Liquid Dynamics Corp. v. Vaughan

7    Company, Inc., 449 F.3d 1209, 1225 (Fed. Cir. 2006) (willfulness is an "intent-

8    implicating question")]  Thus, Courts are often hesitant to make a willfulness finding

9    on pleadings/papers alone. [F.O.B. Instruments, Ltd, supra; see also Ellison Educ.

10   Equip., Inc. v. Chen, 2004 U.S. Dist. LEXIS 26947, 39-41 (C.D. Cal. Dec. 21, 2004)

11   (where plaintiff's summary judgment on the issue of willful infringement was denied);

12   Koon Chun Hing Kee Soy & Sauce Factory v. Star Mark Mgmt., 2007 US. Dist.

13   LEXIS 1404, 46 (E.D.N.Y. Jan. 8, 2007) ("summary judgment is inappropriate where,

14   as here, the Court may not make credibility judgments…")]

15        "To sufficiently plead a claim for willful infringement, a patentee must make out

16   the *barest* factual assertion of knowledge of an issued patent."  [Robert Bosch

17   Healthcare Sys., Inc. v. Express MD Solutions, LLC, 2012 WL 2803617, *3 (N.D. Cal.

18   July 10, 2012) (emphasis); Avocet Sports Tech., Inc. v. Garmin Int'l, Inc., Case No.

19   2012 WL 1030031, *4 (N.D. Cal. Mar. 22, 2012)]  California federal courts have

20   required plaintiffs to plead pre-suit knowledge in order to adequately plead willful

21   infringement. [Unilin Beheer B.V. v. Tropical Flooring, 2014 U.S. Dist. LEXIS 85955,

22   17-18 (C.D. Cal. June 13, 2014)]  However, a pleading for willful infringement need

23   only amount to "with a knowledge of the patent and of his infringement."  [Jardin v.

24   Datallegro, Inc., 2009 U.S. Dist. LEXIS 3339, 19 (S.D. Cal. Jan. 18, 2009) (where

25   plaintiff alleged that defendants had "actual or constructive knowledge of the '874

26   Patent, yet continue to infringe this patent to this very day," and such was sufficient to

27   allege that defendants had knowledge of the patent and of their infringement).]

28

1    In the present case, Deckers' allegations surpass the "barest factual assertions"

2  requirement.  Deckers has identified the accused products and alleged that "Defendants

3  had pre-suit knowledge of Deckers' rights to the '999 Patent." [Complaint, ¶¶ 15, 40]

4  Deckers also states that this pre-suit knowledge was due to the widespread popularity

5  and recognition of the Bailey Button boot and the patent notice on the products

6  themselves [Complaint, ¶ 40].  The Complaint contains allegations that Defendants are

7  competitors who have "copied Deckers' boot designs," and these acts were done "in an

8  effort to exploit Deckers' reputation in the market," "in bad faith," "knowingly and

9  intentionally," and "in total disregard of Deckers' right to control its intellectual

10  property." [Complaint, ¶¶ 16, 19, 35, 36]  Deckers has not only specifically pled

11  Defendants' "pre-suit knowledge" of the '999 Patent, but has also pled facts giving rise

12  to same, that Defendants' acts were done in bad faith and that such actions will persist

13  and continue to damage Deckers[3].  This is precisely the type of exploitative conduct

14  that gives rise to willfulness.

15  **V.    DECKERS' CALIFORNIA STATE CLAIMS ARE ADEQUATELY PLED**

16       **A.    Deckers Has Sufficiently Pled Its Lanham Act Claim and Therefore**

17            **Sufficiently Pled Its State Law Claims**

18       Deckers has pled Unfair Competition in violation of California Business and

19  Professions Code § 17200 as well as a claim for Unfair Competition under California

20  common law.  The Ninth Circuit "has consistently held that state common law claims

21  of unfair competition and actions pursuant to California Business and Professions

22  Code § 17200 are substantially congruent to claims made under the Lanham Act."

23  [Ingrid & Isabel, LLC v. Baby Be Mine, LLC, 2014 U.S. Dist. LEXIS 140553, 23

24  (N.D. Cal. Oct 1, 2014) (citing Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th

25

26  ───────────────

27  [3] Contrast to Deckers Outdoor Corp. v. J.C. Penney Co., 2014 U.S. Dist. 126299 (C.D.
    Cal. Sept. 28, 2014), where Deckers did not specifically plead pre-suit knowledge of

28  patent in the complaint that was on review before the Court.

1   Cir.1994))]  Because Deckers has adequately pled its claims for trade dress and patent

2   infringement, it has also adequately pled its Fourth and Fifth claims for Unfair

3   Competition under California and Common Law.

4       **B.   Deckers Has Standing for Its Claim of Violation of California**

5           **Business and Professions Code § 17200**

6           In order to establish standing for an Unfair Competition claim under § 17200, a

7   plaintiff must demonstrate that they "suffered injury in fact and [ ] lost money or

8   property as a result of the unfair competition." [Cal. Bus. & Prof. Code § 17204;

9   Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011)]  The Kwikset court provides

10  that "[t]here are innumerable ways in which economic injury from unfair competition

11  may be shown," including if the plaintiff "[is] deprived of money or property to which

12  he or she has a cognizable claim."  [Id.; see also In re Sony Gaming Networks &

13  Customer Data Sec. Breach Litig., 996 F. Supp. 2d 942, 987 (S.D. Cal. 2014)]

14          Deckers has alleged injury in fact in the form of lost money or property as a

15  result of Defendants' activities.  Deckers states that it has suffered loss of the right to

16  control its intellectual property [Complaint, ¶¶ 28, 53], injury to its business and

17  reputation [Id., ¶¶ 37, 52], and misappropriation of its goodwill [Id., ¶ 52]  The

18  Complaint also alleges that "[a]s a direct and proximate result of Defendants' unlawful

19  infringement, Deckers has suffered damages and will continue to suffer damages in an

20  amount that is not presently ascertainable but will be proven at trial" and that Deckers

21  is entitled to recovery of its damages as a result of their acts. [Id., ¶¶ 54, 52] These

22  statements are in compliance with Kwikset and § 17200 in pleading injury in fact and

23  therefore establishing standing.  [See Airwair Int'l LTD v. Vans, Inc., 2013 U.S. Dist.

24  LEXIS 100120, 28 (N.D. Cal. July 17, 2013) (Plaintiff alleged damages in the form of

25  lost goodwill, loss of sales, defendant's profits attributable to infringement, and

26  irreparable harm.  Court determined, that because plaintiff successfully pled its

27  Lanham Act claims, the allegations of lost sales and unjust enrichment were plausible

28

15

and denied the motion to dismiss as to plaintiff's § 17200 claim.)]  Thus, Defendants'

arguments regarding standing fail.

### C.      Deckers' California State and Common Law Unfair Competition Claims are not Preempted by its Federal Claims

Defendants' argument that Deckers' California unfair competition claims are

preempted is based entirely on case law regarding preemption of claims under the UCL

by the Patent Act, with no discussions regarding preemption of the common law unfair

competition claim (Fifth Claim for Relief) or common law trade dress infringement

claim (Third Claim for Relief), and thus the latter claims are not subject to dismiss.

[See Defendants' Memorandum in Support of Motion to Dismiss, pp. 21, lines 6-13

and 23, lines 10-25]

Contrary to Defendant's assertions, the Patent Act does not automatically

preempt any and all unfair competition claims.  As the Ninth Circuit explained in

Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc., 7 F.3d 1434 (9th Cir. 1993):

> "Preemption analysis involves determining whether the state law claim contains an element not shared by the federal law; *an element which changes the nature of the action 'so that it is qualitatively different from a copyright (or patent) infringement claim*.' * * * * 'Thus, preemption law ... requires analysis of each theory (of unfair competition) to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright (or patent) protection.'"  [Summit Mach. Tool Mfg. Corp., 7 F.3d at 1439-40 (internal citations omitted) (emphasis)]

California's UCL prohibits businesses from engaging in "any unlawful, unfair or

fraudulent business act or practice and unfair, deceptive, untrue or misleading

advertising." [Cal. Bus. Prof. Code § 17200]  Unlike the Patent Act, the UCL 'governs

"anti-competitive business practices" as well as injuries to consumers, and has as a

major purpose "the preservation of fair business competition." [Id.; Boschma v. Home

Loan Center, Inc., 198 Cal. App. 4th 230, 252 (Cal. App. 4th Dist. 2011)]

Accordingly, "an act can be alleged to violate any or all of the three prongs of the

1  UCL—unlawful, unfair, or fraudulent." [Berryman v. Merit Prop. Mgmt., Inc., 152

2  Cal. App. 4th 1544, 1554 (2007)]

3      Defendants urge this Court to apply the ruling from Deckers Outdoor Corp. v.

4  J.C. Penney Co., 2014 U.S. Dist. LEXIS 126299 (C.D. Cal. Sept. 8, 2014).  However,

5  the Court, in issuing its ruling, did not address the impact of Deckers' additional

6  allegations regarding Defendants' attempts to pass of its goods as those

7  originating/associated with Deckers and deliberate attempts to deceive consumers in its

8  analysis.

9      Here, Deckers has alleged, *in addition to* infringement of its design patent

10  allegations regarding Defendants' unfair business practices and intent to deceive

11  consumers:

12      • "Defendants are  competitors and have copied Deckers' boot
13        designs in an effort to exploit Deckers' reputation in the
         market." [Complaint, ¶ 16, see also ¶ 58]

14      • "Defendants have acted in bad faith and that Defendants' acts
15        have misled and confused and were intended to cause
         confusion, or to cause mistake, or to deceive as to the
16        affiliation, connection, or association of Defendants'
         Infringing Products with Deckers, or as to the origin,
17        sponsorship, or approval of Defendants' Infringing Products
         by Deckers." [Complaint, ¶ 19; see also ¶ 51]

18      • "Defendants had pre-suit knowledge of Deckers' rights to the
19        '999 Patent and has intentionally copied said design on their
         own brand of products in an effort to pass them off as if they
20        originated, are associated with, are affiliated with, are
         sponsored by, are authorized by, and/or are approved by
21        Deckers." [Complaint, ¶ 40]

22      • "The deceptive, unfair and fraudulent practices set forth
         herein have been undertaken with knowledge by Defendants
23        willfully with the intention of causing harm to Deckers and
         for the calculated purpose of misappropriating Deckers'
24        goodwill and business reputation." [Complaint, ¶ 52]

25      Thus, not only have Defendants infringed upon Deckers' rights to the '999

26  Patent, Deckers has alleged that Defendants have infringed upon Deckers' patent and

27  trade dress intentionally in an *attempt to deceive the public* into mistakenly believing

28  that the products are sponsored by, affiliated with, and/or associated with Deckers.

17

[See Watson Laboratories, Inc. v. Rhone—Poulenc Rorer, Inc., 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001) (The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest.")]

Furthermore, Defendants' copied the Bailey Button design on its own brand of products in an effort to "*pass them off* as if they originated, are associated with, are affiliated with, are sponsored by, are authorized by, and/or are approved by Deckers." Unfair competition under California common law is thought to be "narrower" than similar claims under § 17200, and "is generally thought to be synonymous with the act of 'passing off' one's goods as those of another."  [Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1263 (1992); Aurora World, 719 F. Supp. 2d at 1165 n. 108]  As such, alleging common law unfair competition amounts to an allegation of "passing off" a product as that of a competitor, which distinguishes the claim from Deckers' patent infringement claim.

Finally, where Deckers has adequately pled trade dress infringement, which additionally serve as a basis for the unfair competition claims, said claims cannot be preempted by the Patent Act, which has no application to trademark/trade dress rights. [AddVenture Prods. v. Simply Smashing, Inc., 2007 U.S. Dist. LEXIS 69607, 7 (S.D. Cal. Sept. 20, 2007) (motion to dismiss causes of action for unfair competition under Cal. Bus. & Prof. Code § 17200 and state common law denied where plaintiff had sufficiently pled trade dress infringement and false advertising)[4]]

---

[4] The Lanham Act serves the goal of national uniformity by providing a nationwide floor, assuring the public and trademark owners at least a minimum level of protection. The Ninth Circuit has held that California state trademark infringement is not preempted by the Lanham Act because it affords *more* protection to trademark owners than afforded under federal trademark law.  [Golden Door, Inc. v. Odisho, 646 F.2d 347, 352 (9th Cir. 1980) (holding that the Lanham Act did not preempt state law where the two did not conflict)] Indeed, courts in the Ninth Circuit have relied on the Golden Door in denying motions to dismiss based upon Defendants' preemption theory.  [See e.g. Craigslist, Inc. v. Autoposterpro, Inc., 2009 U.S. Dist. LEXIS 31587, 7-8 (N.D. Cal. Mar. 27, 2009) ("[t]he motion to dismiss provides no valid authority or grounds

1   Courts have held that alleging bad faith may also avoid preemption. [Dimension
2   One Spas, Inc. v. Coverplay, Inc., 2008 WL 4165034, *17 (S.D. Cal., 2008) citing to
3   Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1374 (Fed.
4   Cir., 2004); see also BriteSmile, Inc. v. Discus Dental, Inc., 2005 WL 3096275, *4
5   (N.D. Cal., 2005) (motion to dismiss unfair competition claim based upon federal
6   preemption denied); Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1355
7   (Fed. Cir., 1999) ("to avoid patent law preemption of ... state law claims, bad faith
8   must be alleged and ultimately proven, even if bad faith is not otherwise an element of
9   the tort claim.")]  Deckers has alleged that "Defendants' infringing acts were *intended*
10  to capitalize on Deckers' goodwill associate therewith for Defendants own pecuniary
11  gain." [Complaint, ¶ 59]  Deckers has also alleged that "Defendants' acts are *willful,*
12  *deliberate, and intended* to confuse the public and to injure Deckers."  [Complaint, ¶
13  60]

14      Since Deckers' unfair competition claims are based upon claims of injury
15  protected by California's UCL and common law that are not protected by the patent act
16  and are not based solely on patent infringement, said claims are not preempted.

## VI.   DECKERS' CLAIMS AGAINST DEFENDANT CAROL LEE ARE
   ## ADEQUATELY PLED

### A.   Individual Liability for Deckers' Trade Dress Claims

20      In the context of infringement, corporate officers "are personally liable for the
21  corporation's copyright and trademark infringements when they are a 'moving, active
22  conscious force behind the corporation's infringement.'" [Carson v. Verismart

---

24  for preemptions of Plaintiff's state law claims under the Lanham Act."); T Shirts Plus
25  v. T-Shirts Plus, Inc., 1983 U.S. Dist. LEXIS 13717, 10 (C.D. Cal. Sept. 15, 1983)
26  (motion to dismiss denied holding that "[b]y extending to federal registrants greater
   protection than is available under the Lanham Act, California law, like the Act,
27  protects both the public from confusion about the services and products it is receiving
28  and the public relations investment of plaintiff.")]

1  Software, 2012 U.S. Dist. LEXIS 42116, 11-12 (N.D. Cal. Mar. 27, 2012) (citing

2  Adobe Systems Inc. v. Childers, 2011 U.S. Dist. LEXIS 14534, 7 (N.D. Cal. Feb. 14,

3  2011);  Novel, Inc. v. Unicom Sales, Inc., 2004 U.S. Dist. LEXIS 16861(N.D. Cal.

4  Aug.17, 2004)); Novell, Inc. v. Unicom Sales, Inc., 2004 WL 1839117, 17 (N.D. Cal.,

5  2004); Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477-78

6  (11th Cir., 1991) (individual may be held liable for Lanham Act violations if she has

7  "actively caused infringement as a moving, conscious force"); Chloe v.

8  DesignersImports.com USA, Inc., 2009 WL 1227927, at 11 (S.D.N.Y. Apr. 30, 2009

9  ("[T]he individual liability of a corporate officer for [her] participation in unlawful

10  conduct is distinct from any issues of piercing the corporate veil." (internal quotation

11  marks and citation omitted)).]  This is true "regardless as to whether they are aware

12  that their acts will result in infringement."  [Carson, 2012 U.S. Dist. LEXIS 42120 at

13  14; Adobe Systems Inc., 2011 U.S. Dist. LEXIS 14534 at 7; Novell, 2004 U.S. Dist.

14  LEXIS 16861 at 17]

15       Further, "[i]t does not follow that the corporate form automatically immunizes

16  corporate officers from personal liability for conduct undertaken on the corporation's

17  behalf."  [OTR Wheel Eng'g, Inc. v West Worldwid Servs., 2014 U.S. Dist. LEXIS

18  106004, 9 (E.D. Wash. Aug. 1, 2014) (citing Mone v. Dranow, 945 F.2d 306, 308 (9th

19  Cir. 1991) ("[F]ederal common law hold[s] that corporate officers are personally liable

20  for their torts even if the torts were committed on behalf of the corporation."));

21  Restatement (Third) of Agency § 7.01 cmt. D ("[A]n organizational officer is subject

22  to liability when the officer directly participates in conduct that constitutes a tort]  An

23  individual defendant's liability is dependent on his or her own knowledge and controls

24  over the company's infringement, "regardless of whether her actions or omissions

25  were taken in an official or personal capacity." [OTR Wheel Eng'g, 2014 U.S. Dist.

26  LEXIS 16861 at 10 (citing Coach, Inc. v. Sapatis, 27 F. Supp. 3d 239 (D.N.H. 2014))]

27       With respect to Carol Lee, Deckers has alleged that she is an "*owner, officer,*

28  *director, and/or managing agent*" of Fortune Dynamic, Inc. and is the "*active,*

1  *moving, conscious force behind the infringing activities alleged*.” [Complaint, ¶¶ 6,

2  14] These allegations are sufficient to state a cause of action against Defendant Lee.

3  Courts have routinely denied motions to dismiss where similar allegations, without

4  more, were pled. [*See e.g.* Riverdeep Interactive Learning, Ltd. v. MPS Multimedia,

5  Inc., 2006 U.S. Dist. LEXIS 94524 (N.D. Cal. Dec. 22, 2006); Best of Everything of

6  Sw. Florida, Inc. v. Simply the Best, LLC, 2011 WL 4634147 (M.D. Fla. Oct. 6,

7  2011); JTH Tax, Inc. v. Gouneh, 721 F.Supp.2d 132, 140 (N.D.N.Y., 2010)]

8       In Riverdeep, the court denied defendants’ motion to dismiss claims of

9  trademark infringement for failure to state a claim against an individual defendant

10  where both the corporation and individual were named. [2006 U.S. Dist. LEXIS 94524

11  at 14] Though the plaintiffs’ allegations concerning individual liability of the

12  corporation’s officer were confined to a single paragraph: “*Chen, as MPS’ President*

13  *and CEO, directs, controls and ratifies the actions of MPS including the unlicensed*

14  *and unauthorized replication and distribution of Riverdeep software,*” the Court

15  nonetheless denied Defendants’ motion to dismiss and held that the plaintiffs had

16  alleged sufficient facts to state a claim against said officer. (Id. at 14; citing to Novell,

17  *supra*, 2004 WL 1839117)

18       Similarly, in Best of Everything, the court denied an analogous motion to

19  dismiss for failure to state a claim against an individual where a corporation and

20  individual were both charged with trademark infringement. [Best of Everything of

21  Southwest Fla., Inc. v. Simply the Best, LLC, 2011 U.S. Dist. LEXIS 115652 (M.D.

22  Fla. Oct. 6, 2011)] The plaintiff alleged that a relationship existed between the

23  individual defendant and the corporation, and the Court held that “[t]he precise nature

24  of Weinzimmer’s relationship with Simply the Best is a discoverable fact, and should

25  the discovery process reveal that Weinzimmer was not a moving, conscious force

26  behind the alleged infringement, Defendants may raise the issue in a motion for

27  summary judgment.” [Id. at 6]

28

1  Deckers has alleged sufficient facts to state a claim against the Defendant Lee

2  for its Lanham Act claims.  Defendants have not provided any authority or legal

3  argument in its brief to support dismissal of said claims against the individual

4  defendant.

5  **B.    Individual Liability for Deckers' Unfair Competition Claims**

6  "[A]n owner or officer of a corporation may be individually liable under the

7  UCL if he or she actively and directly participates in the unfair business practice."

8  [O'Connor v. Uber Techs., Inc., 2013 U.S. Dist. LEXIS 171813, 61-62 (N.D. Cal. Dec.

9  5, 2013) (internal quotations omitted)]  Additionally, "trademark infringement is a

10  classic case of unfair competition under California law."  [Hewlett-Packard Co. v.

11  Repeat-O-Type Stencil Mfg. Corp., 1995 U.S. Dist. LEXIS 22676, 21-22 (N.D. Cal.

12  Aug. 30, 1995)]  Again, Deckers has alleged that Defendant Lee is an "owner, officer,

13  director, and/or managing agent" of Fortune Dynamic, Inc. and is the "active, moving,

14  conscious force behind the infringing activities alleged."  [Complaint, ¶¶ 6, 14]

15  Because Deckers has properly alleged infringement of the Bailey Button Trade

16  Dress and Defendant Lee's involvement in same, it has also sufficiently pled its claims

17  for Unfair Competition against her.  Defendants have not put forth any legal authority

18  or arguments to support dismissal of these claims against Defendant Lee.

19  **C.    Individual Liability for Deckers' Patent Infringement Claim**

20  "Corporate officers are also liable for the tort of patent infringement under 35

21  U.S.C. § 271 where the officer has an 'active directing hand in full charge of its

22  operations.'" [Wordtech Sys. v. Integrated Network Solutions, Corp., 2009 U.S. Dist.

23  LEXIS 93192, 4 (E.D. Cal. Oct. 6, 2009) (where the court, on application for default

24  judgment, held that corporate officer was personally liable where plaintiff had alleged

25  that said individual was an officer and owner of defendant corporation and was

26  individually involved in the infringement of the patents-in-suit) citing to Int'l Mfg. Co.

27  v. Landon, Inc., 336 F.2d 723, 728 (9th Cir.1964) (patent infringement case)]

28

1    35 U.S.C. § 271(b) provides that "[w]hoever actively induces infringement of a

2  patent shall be liable as an infringer." [35 U.S.C. §271(b)]  Under this section,

3  corporate officers who actively assist with their corporation's infringement may be

4  personally liable for inducing infringement *regardless* of whether the circumstances

5  are such that a court should disregard the corporate entity and pierce the corporate veil.

6  [OTR Wheel Eng'g, Inc., 2014 U.S. Dist. LEXIS 106004 at 11; Wordtech Systems,

7  Inc. v. Integrated Network Solutions, Inc., 609 F.3d 1308, 1315-17 (Fed. Cir. 2010);

8  International Manufacturing Co. v. Landon, Inc., 336 F.2d 723, 728–29, 142 U.S.P.Q.

9  421, 425–26 (9th Cir.1964) (officer or "alter ego" was "moving, active conscious force

10  behind [corporation's] infringement" and "is therefore subject to personal liability

11  without regard to whether [the corporation] is his alter ego")]

12    Indeed, courts have denied motions to dismiss where the exact, or very similar,

13  allegations were pled.  [See e.g. E Clampus Vitus v. Steiner, 2013 WL 4431992, 6

14  (E.D. Cal. 2013) (motion to dismiss denied where the plaintiff alleged sufficient facts

15  that demonstrate that the individual defendants acted "*knowingly, intentionally and*

16  *deliberately*" on behalf of the corporate Defendant.); American Technical Machinery

17  Corp. v. Masterpiece Enterprises, Inc., 235 F.Supp. 917, 918 (D.C.Pa. 1964) (motion

18  to dismiss denied where complaint contained allegations that individual defendant was

19  "moving, active, conscious force behind infringement" of patent)]

20    Deckers' has alleged that Defendant Lee is an "owner, officer, director, and/or

21  managing agent" of Fortune Dynamic, Inc. and is the "active, moving, conscious force

22  behind the infringing activities alleged" in the Complaint.  [Complaint, ¶¶ 6, 14]

23  Deckers further alleges that Defendant Lee had "pre-suit knowledge of Deckers' rights

24  to the '999 Patent," "intended to cause confusion, or to cause mistake, or to deceive"

25  consumers, and that her actions were "undertaken with knowledge," "were willful,

26  deliberate, and intended to confuse the public and to injure Deckers."  [Complaint, ¶¶

27  19, 40, 45, 52]  Such allegations, which are to be taken as true in the evaluation of the

28  present motion, are sufficient to maintain causes of action against Defendant Lee.

1  **VII.  DECKERS IS ENTITLED TO LEAVE TO AMEND IN THE EVENT**
2  **THIS COURT GRANTS DEFENDANTS' MOTION**

3       If this Court gives any credence to Defendants' arguments, Deckers should be
4  granted leave to amend.  FRCP 15(a expressly provides that leave to amend "shall be
5  freely given when justice so requires."  [FRCP 15(a); <u>Allen v. City of Beverly Hills</u>,
6  911 F. 2d 367, 373 (9th Cir. 1990]  FRCP 15(a) severely restricts the court's discretion
7  to dismiss without leave to amend.  Where a more carefully drafted complaint might
8  state a claim, a plaintiff must be given at least one more chance to amend the
9  complaint before the district court dismisses the action with prejudice.  [<u>Silva v.</u>
10 <u>Bieluch</u>, 351 F. 3d 1045, 1048 (11th Cir. 2003); <u>Doe v. U.S.</u>, 58 F.3d 494, 497 (9th Cir.
11 1995); <u>Cazares v. Household Finance Corp.</u>,  2005 WL 6418178 (C.D. Cal.,2005)

12 **VIII. <u>CONCLUSION</u>**

13      For the reasons given above, Deckers respectfully requests that this Court
14 DENY DEFENDANTS' FRCP 12(b)(6)- motion in its entirety.  Alternatively, Deckers
15 should be granted leave to amend its pleadings.

16

17  DATED:  April 20, 2015              BLAKELY LAW GROUP

18

19                             By:   */s/ Jessica C. Covington*
20                                   Brent H. Blakely
                                    Cindy Chan
21                                   Jessica C. Covington
                                    ***Attorneys for Plaintiff***
22                                   ***Deckers Outdoor Corporation***

23

24

25

26

27

28